UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

ROBERT O.,

                                Plaintiff,

v.                                                              3:20-CV-1612 (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                                Defendant.
———————————————————————————

APPEARANCES:                                OF COUNSEL:
LACHMAN, GORTON LAW FIRM            PETER A. GORTON, ESQ.
 *Counsel for Plaintiff*
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

SOCIAL SECURITY ADMINISTRATION        LOUIS JOHN GEORGE, ESQ.
OFFICE OF THE GENERAL COUNSEL
 *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, MA 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

### DECISION AND ORDER

        Robert O. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of a final decision of the Commissioner of Social Security ("Commissioner") denying his

requests for disability and supplemental security benefits.  (Dkt. No. 1.)  This case has proceeded

in accordance with General Order 18 of this Court.  Pursuant to 28 U.S.C. § 636(c), the parties

consented to the disposition of this case by a Magistrate Judge.  (Dkt. No. 7.)  Both parties filed

briefs.  (Dkt. Nos. 9, 14.)  For the reasons set forth below, the matter is reversed and remanded

for further administrative proceedings.

I.   **BACKGROUND**

Plaintiff was born in 1976 and earned a GED in 1996.  (T. at 225, 256.[1])  Plaintiff was most recently employed at the Salvation Army, where he worked for nearly two years as a general laborer.  *Id.* at 37, 256.  During his eight-hour shifts, he lifted donations, cleaned them, and checked to see if they worked.  *Id.* at 37-38, 57.  Plaintiff regularly lifted donations weighing 50 to 150 pounds without assistance.  *Id.* at 37-38.  He stopped working on December 31, 2016. *Id.* at 39, 255.

Plaintiff filed for disability insurance and supplemental security income on February 19, 2019, claiming a disability onset date of December 31, 2016.  *Id*. at 13, 225-26.  Plaintiff claimed the following disabilities: spinal stenosis, arthritis, depression, pain in both legs, spinal nerve pain, lumbar spondylosis, lumbar disc herniation, and lumbago with sciatica.  *Id.* at 255.  The Commissioner denied Plaintiff's initial application, and he requested a hearing before an Administrative Law Judge ("ALJ").  *Id.* at 13, 120, 134.  ALJ John P. Ramos held a hearing on March 17, 2020, and Plaintiff testified along with vocational expert Bethany Pyro.  *Id.* at 32-63. At the hearing, Plaintiff amended the alleged onset date of his disability to October 30, 2018.  *Id.* at 13, 54-55.  The ALJ denied Plaintiff's claim for benefits on March 30, 2020, and the Appeals Council denied Plaintiff's request for review on October 29, 2020.  *Id.* at 1, 13-25.  Plaintiff now seeks this Court's review.  (Dkt. No. 1.)

---

[1] The Administrative Transcript is found at Dkt. No. 8.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers the Court's CM/ECF electronic filing system assigns. Page references to other documents identified by docket number are to the page numbers assigned by the Court's CM/ECF electronic filing system.

## II.  STANDARD OF REVIEW

In reviewing a final decision of the Commissioner, courts must first determine whether the correct legal standards were applied, and if so, whether substantial evidence supports the decision.  *Atwater v. Astrue*, 512 F. App'x 67, 69 (2d Cir. 2013) (citing *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999)); *see also Brennan v. Colvin*, No. 13-CV-6338 AJN RLE, 2015 WL 1402204, at *10 (S.D.N.Y. Mar. 25, 2015).[2]  "Failure to apply the correct legal standards is grounds for reversal."  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004).  Accordingly, the reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied.  *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

If the ALJ applied the correct legal standards, the reviewing court must determine whether the ALJ's decision is supported by substantial evidence.  *Tejada*, 167 F.3d at 773; *Bowen*, 817 F.2d at 985.  "Substantial evidence means more than a mere scintilla."  *Sczepanski v. Saul*, 946 F.3d 152, 157 (2d Cir. 2020).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*; *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the ALJ's finding as to any fact is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g); *Diaz v. Shalala*, 59 F.3d 307, 312 (2d Cir. 1995).

---

[2] "Since the standards for determination of disability and for judicial review in cases under 42 U.S.C. § 423 and 42 U.S.C. § 1382c(a)(3) are identical, decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Dep't of Health & Hum. Servs. of U.S.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983).  Moreover, "[t]he regulations that govern the two programs are, for today's purposes, equivalent."  *Smith v. Berryhill*, 139 S. Ct. 1765, 1772 (2019).  Rather than cite to relevant regulations under both 20 C.F.R. § 404.1501 *et seq.* (governing disability insurance) and 20 C.F.R. § 416.901 *et. seq.* (governing supplemental security income), the Court will cite to the disability insurance regulations.  *See, e.g.*, *Sims v. Apfel*, 530 U.S. 103, 107 n.2 (2000).  Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted.  *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

When inadequacies in the ALJ's decision frustrate meaningful review of the substantial

evidence inquiry, remand may be appropriate.  *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir.

2019); *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).  Remand may accordingly be appropriate

where the ALJ has failed to develop the record, *Klemens v. Berryhill*, 703 F. App'x 35, 38 (2d

Cir. 2017); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999), adequately appraise the weight or

persuasive value of witness testimony, *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019);

*Burgess v. Astrue*, 537 F.3d 117, 130 (2d Cir. 2008), or explain his reasoning, *Klemens*, 703 F.

App'x at 36-38; *Pratts*, 94 F.3d at 39.

## III.   DISCUSSION

The ALJ denied Plaintiff's request for benefits because he determined Plaintiff could

perform jobs that existed in sufficient numbers in the national economy.  (T. at 23-24.)  Plaintiff

now challenges the ALJ's findings and conclusions concerning medical opinion evidence,

Plaintiff's symptoms, and his residual functional capacity ("RFC").  (*See* Dkt. No. 9.)  Plaintiff

contends the ALJ failed to properly evaluate the degree to which his impairments and the

resulting side-effects—including pain—affect his ability to concentrate, maintain pace, and keep

regular attendance at work.  *See id.*  This review accordingly focuses on evidence pertinent to the

ALJ's evaluation of Plaintiff's capacity to concentrate, maintain pace, and keep regular

attendance at work.

### A.     The ALJ's Evaluation of Medical Opinion Evidence

#### 1.     Medical Evidence

##### a.     Consultative Examinations

On April 25, 2019, Dr. Gilbert Jenouri and Sarah Long, Ph.D., each performed a

consultative examination on Plaintiff.  *Id.* at 400-403, 405-408.  Dr. Jenouri noted that Plaintiff

complained of back pain registering 7/10 on the pain scale. *Id.* at 400, 402. Dr. Jenouri observed Plaintiff's medications, his general disposition, and his daily activities, which included "cooking twice a week," showering "three times a week," dressing himself "every day," and "watch[ing] TV and listen[ing] to the radio." *Id.* at 400-402. Dr. Jenouri performed a physical examination and diagnosed Plaintiff with neck pain, lower back pain, bilateral shoulder pain, and bilateral lower extremity radiculopathy. *Id.* at 402. Dr. Jenouri concluded Plaintiff had moderate restrictions on his ability to walk, stand for long periods, bend, climb stairs, lift, and carry. *Id.* at 402.

Dr. Long took note of Plaintiff's medical conditions, his medications, and his complaint of severe pain. *Id.* at 405. Dr. Long evaluated Plaintiff's mental status, concluding he was functioning "on an average intellectual level." *Id.* at 406. Next, Dr. Long took stock of Plaintiff's daily activities, indicating that he cooks with the microwave, he cannot stand long enough to do the laundry, he does not shop because it hurts to walk, he does not clean, and he has a limited social life. *Id.* at 407. Based on the examination, Dr. Long concluded Plaintiff did not have any limitations "regarding simple and complex tasks and making appropriate decisions," but he may have "mild to, at times, moderate limitations regarding maintaining attention and concentration as he reports experiencing sudden nerve pain, which is a distraction." *Id.* Dr. Long opined that Plaintiff "appears generally capable of maintaining a regular schedule." *Id.* However, according to Dr. Long, Plaintiff's prognosis was "dependent on physical factors." *Id.*

### b.    *Medical Opinions*

On May 9, 2019, state agency psychologist Dr. D. Brown and state agency physician Dr. I. Seok issued two identical disability determination explanations (i.e., one for each of Plaintiff's

claims) wherein they opined that Plaintiff was not disabled.  (T. at 64-89.)  Based on their review of Plaintiff's medical records,[3] Drs. Brown and Seok concluded Plaintiff had four medically determinable impairments: (1) severe spine disorders; (2) severe other and unspecified arthropathies; (3) non-severe anxiety and obsessive-compulsive disorder, and (4) non-severe depressive, bipolar and related disorders.  *Id.* at 68-69, 81.)  They further concluded Plaintiff's impairments could reasonably be expected to produce his symptoms, including pain.  *Id.* at 70, 83.

Drs. Brown and Seok found Plaintiff's statements about the intensity, persistence, and limiting effects of his symptoms to be partially consistent with the evidence in his file, but concluded the objective medical evidence alone did not substantiate his statements.  *Id.* According to Drs. Brown and Seok, Plaintiff's longitudinal treatment records were the "most informative in assessing the consistency of [his] statements about [his] symptom related limitations."  *Id.*  Based upon their review of those records, Drs. Brown and Seok concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are generally not consistent with the evidence of record."  *Id.*

Drs. Brown and Seok did not explain or identify which symptoms they considered to be consistent or inconsistent with Plaintiff's treatment records.  *See id.* at 69-73, 82-86.  Instead, in their respective "Additional Explanation" sections of the disability determination, they summarized the medical records they reviewed.  *Id.* at 69, 73, 82, 86.  For example, Dr. Seok's

---

[3] Both disability determinations appear to be based on medical records from the following sources: two medical opinions from Industrial Medicine, dated Apr. 25, 2019; records from Southern Tier Imaging, received Apr. 23, 2019; records from an unknown source, received Apr. 22, 2019; records from UHS Pain Management, received Apr. 15, 2019; records from UHS Neurosurgery, received Apr. 8, 2019; and records from UHS Primary Care, dated Mar. 27, 2019. (T. at 65-67, 78-80.)

"Additional Explanation" recapped Plaintiff's alleged disabilities and associated pain. *Id.* at 73, 86. Dr. Seok observed that an MRI from January 19, 2019, "showed lumbar spine disc disease with stenosis and neural encroachment." Finally, Dr. Seok summarized Plaintiff's treatments notes from an exam dated April 25, 2019. *Id.*

Dr. Brown offered no opinion on Plaintiff's residual functional capacity, but Dr. Seok did. *Id.* at 68-69, 71-73, 81-82, 84-86. Dr. Seok concluded Plaintiff had no visual, communicative, or environmental limitations, but some exertional, postural, and manipulative limitations. *Id.* at 71-73, 84-86. Dr. Seok further concluded there was no medical opinion about Plaintiff's abilities and limitations that was more restrictive than these findings. *Id.* at 73, 86. However, one of the medical opinions Dr. Seok reviewed, presumably Dr. Long's,[4] determined Plaintiff may experience "mild to, at times, moderate limitations regarding maintaining attention and concentration as he reports experiencing sudden nerve pain, which is a distraction." *Id.* at 66, 79. Dr. Seok offered no opinion on Plaintiff's ability to maintain attention, concentration, and regular attendance. *See id.* at 71-73, 84-86.

On July 10, 2019, state agency psychologist L. Blackwell, Ph.D., and state agency physician Dr. A. Saeed issued two disability determination explanations. *Id.* at 92-117. The disability determinations were identical to the disability determinations issued by Drs. Brown and Seok on May 9, 2019. *Compare id.* at 64-89, *with id.* at 92-117. Drs. Blackwell and Saeed did not review any additional medical records. *See id.* at 93-96, 106-109. They did not reach any different opinions. *See id.* at 97-103, 109-17. They also did not change a single word from the "Additional Explanation" sections originally presented by Drs. Brown and Seok. *See id.* at 98, 102, 111, 115.

---

[4] (*Compare* T. at 407, *with id.* at 64, 79.)

Tyler Kelly, DO, opined on Plaintiff's conditions on March 27, 2019, July 9, 2019, and January 29, 2020.  *Id.* at 384-85, 419-20, 538.  In the first of the three opinions, Dr. Kelly did not comment on Plaintiff's ability to concentrate, maintain pace, and keep regular attendance at work.  *Id.* at 384-85.  In the second, Dr. Kelly completed a two-page worksheet where he opined Plaintiff's impairments "and/or any side effects of medication" would cause pain, fatigue, diminished concentration, diminished work pace, and a need to rest at work.  *Id.* at 419.  Dr. Kelly concluded Plaintiff's impairments, pain, and/or side effects of medication would cause him to be off task more than 33% of the day at work.  *Id.*  According to Dr. Kelly, the severity of Plaintiff's pain would vary by the day, so some days would be better than others.  *Id.*  Dr. Kelly concluded this would result in Plaintiff being absent from work "[m]ore than 4 days per month." *Id.* at 420.  Finally, Dr. Kelly noted Plaintiff's medication cyclobenzaprine "may cause drowsiness," and his use of Aleve may cause bleeding in the gastrointestinal tract.  *Id*.  Dr. Kelly offered no explanation for these conclusions, which were based on physical therapy sessions with Plaintiff from October 12, 2018, through July 9, 2019.  *Id.* at 419-20.  Dr. Kelly's third opinion included no additional insights, findings, or explanations.  *Compare id.* at 419, *with id.* at 538.

On July 17, 2019, Dr. Matthew Bennett completed the same two-page worksheet on how Plaintiff's impairments impacted his ability to work.  *Id.* at 424-25.  Like Dr. Kelly, Dr. Bennett determined that Plaintiff's impairments and/or the side effects of medication would cause pain, fatigue, diminished concentration, diminished pace, and a need to rest at work.  *Id.* at 424.  Dr. Bennet concluded this would cause Plaintiff to be off task more than 33% of the day at work.  *Id.* He also concluded that the severity of Plaintiff's conditions would vary by day, causing him to miss more than four days per month.  *Id.* at 424-25.  Dr. Bennett offered no explanation for these

conclusions, which were based on his treatment of Plaintiff from February 1, 2019, to July 17, 2019.  *Id.*

On January 28, 2020, certified registered nurse practitioner ("NP") Timothy Leonard also completed the two-page worksheet on Plaintiff's work-related limitations.  *Id.* at 528-29.  Like Drs. Kelly and Bennett, NP Leonard opined that Plaintiff's impairments and/or the side effects of medication would cause pain, fatigue, diminished concentration, diminished work pace, and a need to rest at work.  *Id.* at 528.  NP Leonard also concluded Plaintiff's conditions would vary daily.  *Id.*  However, NP Leonard was unable to offer an opinion on how often Plaintiff's conditions would cause him to be off task or absent from work.  *Id.* at 528-29.  NP Leonard nonetheless noted that Plaintiff "admits to short term memory loss," and is using medical marijuana to treat his pain.  *Id.* at 529, 531-32.  According to NP Leonard, Plaintiff's medications were likely to cause drowsiness and "impaired cognitive function."  *Id.* at 529.  He offered no explanation for these conclusions, which were based on his treatment of Plaintiff from August 27, 2019, to November 26, 2019.  *Id.* at 528-29.

On January 29, 2020, Marilyn Geller, Ph.D., completed a two-page worksheet wherein she offered an opinion on how Plaintiff's mental impairments affected his ability to work on a regular and continuing basis.  *Id.* at 535-36.  Dr. Geller indicated that Plaintiff's anxiety and chronic pain would cause a "substantial loss" in his ability to maintain attention and concentration.  *Id.* at 535.  Dr. Geller specified this "loss would be greater than 33%," and Plaintiff would be off task "[m]ore than 33% of the day."  *Id.* at 535-36.  Dr. Geller also indicated Plaintiff's anxiety and chronic pain would cause a "major limitation" in his ability to maintain regular attendance, perform activities within a schedule, be punctual, and perform at a consistent pace.  *Id.*  According to Dr. Geller, there would be "no or very little useful ability to

function" in these areas, and Plaintiff would miss "3 or more days per month." *Id.* at 535-36. Dr. Geller offered no explanation for these conclusions. *See id.*

> c.    *Treatment Records*

Plaintiff's treatment records indicate that pain is a primary concern. *See id.* at 325, 328, 331, 336, 339, 342, 345, 348, 353, 365, 371, 430, 443, 448, 454, 468. He appears to complain of pain every time he visits a healthcare professional. *See id.* His healthcare providers have indicated that the pain problem is "fluctuating," but "occurs persistently." *Id.* at 430; *see also id.* at 460 ("The symptoms are intermittent."); *id.* at 500 ("The problem is worsening. It occurs persistently."). According to Plaintiff, the level of pain he experiences ranges from 6/10 to 8/10 on the pain scale. *See id.* at 365, 371, 430, 443, 448, 454, 468. Dr. Kelly indicated Plaintiff's depression was "associated with [his] chronic back pain." *Id.* at 472, 477, 483, 489, 494.

Because of Plaintiff's severe pain, he had an MRI on January 19, 2019. *See id.* at 366, 398. According to Dr. Adesh Tandon, Plaintiff's MRI findings showed "multilevel degenerative disc disease with the worst level seen at L2-3 where he [ha]s got a right-sided paracentral disc herniation and a small extruded fragment." *Id.* at 366; *see also id.* at 398 (indicating "the MRI . . . shows a right L2-3 disc herniation with extrusion."). The MRI also revealed that Plaintiff was experiencing "right-sided foraminal narrowing," "mild loss of disc space height . . . at L5-S1," and there was "evidence of diffuse facet arthropathy." *Id.* at 366. Based on this diagnosis and others, Plaintiff was referred to pain management, and he tried physical therapy, acupuncture, aqua therapy, and various medications. *Id.* at 324-28, 366, 371, 389, 433, 435, 441.

After eight weeks of physical therapy, Plaintiff was only able to "partially meet" his goal of putting on shoes and socks, and increased mobility in bed. *Id.* at 324. He did not meet his goal of being able "to tolerate squatting movements to facilitate proper lifting mechanics." *Id.*

On January 4, 2019, Physician Assistant ("PA") Joseph F. Andusko noted that Plaintiff "failed physical therapy recently and other conservative measures." *Id.* at 371. Andusko further indicated that Plaintiff's use of the medication Cymbalta resulted in "no improvement." *Id.* Plaintiff tried other medications to address his pain. *See id.* at 364, 390, 400, 441, 444. Yet, Plaintiff found that CBD oil, medical marijuana, and acupuncture did not "produce[] any lasting benefit." *Id.* at 441; *see generally id.* at 444-45, 450, 452, 464, 470 (indicating Plaintiff tried using medical marijuana and CBD oil to address pain).

When analyzing Plaintiff's pain, PA Erika K. Armstrong noted that his symptoms were "aggravated by ascending stairs, daily activities, descending stairs, lifting, pushing, standing and walking," and "slouching." *Id.* at 393, 396. Similarly, Dr. James T. Crosby noted Plaintiff's pain "seems to be worse when he's slouching." *Id.* at 398. Armstrong noted Plaintiff's symptoms were "relieved by exercise, heat, lying down, over the counter medication; naproxen sodium, pain meds/drugs and rest," and sitting "in an ergonomic type chair." *Id.* at 393, 396. Similarly, Dr. Crosby indicated it was "best if [Plaintiff is] sitting upright in his computer chair," *id.* at 398, and NP Leonard noted that Plaintiff's pain was palliated by changing position, heat, opioid analgesics, Advil, CBD, and medical marijuana. *Id.* at 443.

### 2.    Non-Medical Evidence

On April 8, 2019, Plaintiff's live-in partner Cheryl Sherwood completed a third-party function report on how Plaintiff's impairments limited his activities. *Id.* at 264-71. Sherwood reported Plaintiff became "weaker and weaker" over the last two years. *Id.* at 264. Sherwood also reported that, except the meals he heats up in the microwave, Plaintiff "almost never" prepares food or meals. *Id.* at 266. According to Sherwood, Plaintiff sometimes needs help getting clothed and getting in and out of the shower; he needs reminders to take his medicine; he

receives help taking care of the dogs; he can fold his laundry while sitting; he moves around the house by leaning on objects; he can drive; he can shop online; he reads and watches videos online; and he can manage his finances.  *Id.* at 265-68.  Sherwood also indicated Plaintiff's impairments affected his concentration, explaining he could pay attention for "maybe 5 minutes" before losing focus due to pain.  *Id.* at 269.  Sherwood also noted Plaintiff's use of Cyclobenzaprine caused drowsiness, sleepiness, and dizziness.  *Id.* at 271.

On April 14, 2019, Plaintiff completed a self-reported function report.  *Id.* at 275-84. Plaintiff indicated the severity of his pain, and noted the medications used to address it.  *Id.* at 283.  He reported he has a "hard time focusing because of the pain," often forgetting or can't remember something "because the pain takes over [his] mind."  *Id.* at 281-82.  Similarly, Plaintiff indicated his pain medications caused dizziness, short term memory loss, and drowsiness.  *Id.* at 284.  Plaintiff also outlined his daily activities, reporting he spends most of his days watching videos and reading in a sitting position.  *Id.* at 275-76, 279.  He cooks with a microwave; he can let his dogs out and give them treats; he can drive a car; he can shop online; he can take care of plants in the house; and he can manage his finances.  *Id.* at 275-79.  However, it is hard for him to get dressed, and he needs reminders to take his medicine.  *Id.* at 276-77.

At the hearing on March 17, 2020, Plaintiff testified about his pain, his attempts to ameliorate the pain, and his daily activities.  *See id.* at 37-52.  Plaintiff started seeking out medical advice when his severe chronic back pain "kept coming [and] was getting greater and greater to the point where I could not tolerate it any longer and perform physically."  *Id.* at 40. According to Plaintiff, the healthcare professionals "discovered . . . that it was [a] herniated disc and bulge on my L4 and L5 pressing on my spinal cord."  *Id.* at 40-41.  The pain would "radiate from those tense disks outward, like kinda of like down my sciatic . . . down my leg, my sciatic

nerve, down into my feet and also that pain triggers the other pain, like in my joints, the fibro and the rheumatoid arthritis." *Id.* at 46.  According to Plaintiff, the manner and severity of his pain "depends on the day, the weather, [and] the activities." *Id.*

Plaintiff further testified that he tried ameliorating the pain with Cyclobenzaprine, Omeprazole, and THC pills. *Id.* at 43.  He explained that the THC pills "definitely make me more tired [and] not with it; more kind of off in my own world sometimes but they do sometimes enable me to kind of move a little bit longer." *Id.*  According to Plaintiff, the medications reduce his pain, but cause him to "lose kind of like focus and remembering what I need to do like short tasks, and also lose coordination." *Id.* at 52.  Plaintiff explained that if he does not take his medications, he experiences "a lot of pain." *Id.* at 51.  But when he does take the medications he is "in a fog" and it is hard for him to "think clearly." *Id.*

Plaintiff also testified that his pain has significantly limited his daily activities. *Id.* at 44-52.  He does not drive very often because leg pain and "medication drowsiness" slow his reactions. *Id.* at 45.  Plaintiff's pain also prevents him from contributing to household chores. *Id.* at 45-46.  He uses a cane to walk outside to retrieve mail, and he navigates through the house using objects in the house for balance and support. *Id.* at 47-48.  Sherwood helps him get out of bed. *Id.* at 48.  He often watches television and reads in an office chair with a stool to support his legs. *Id.* at 48-49.  He testified he can relieve the back pain by sitting down, but has to put his leg up to transfer pressure from his back. *See id.* at 46, 48, 50.

### 3.    The ALJ's Decision

To determine Plaintiff's RFC, the ALJ rated the persuasive value of each medical opinion and reached a conclusion about the consistency between Plaintiff's symptoms and record evidence—including medical opinions. *Id.* at 18-23.  The ALJ assigned persuasive value to the

opinions offered by state agency consultants but assigned no persuasive value to the opinions

offered by Plaintiff's healthcare professionals.  *See id.* at 20-22.  The ALJ concluded the

opinions offered by Drs. Jenouri, Seok, and Saeed were "persuasive because they are largely

consistent with one another and supported by substantial evidence."  *Id.* at 20.  The ALJ

summarized Dr. Jenouri's findings from the consultative examination and concluded they

"support Dr. Jenouri's opinion that [Plaintiff] has 'moderate' limitations for walking and

standing long periods, bending, stair climbing, lifting, and carrying, but no significant limitations

for sitting handling, fingering, or feeling."  *Id.*

  Next, the ALJ found that Drs. Seok and Saeed "each provided a detailed narrative

analysis of the evidence, which included references to specific clinical and diagnostic findings to

support their opinions," including "the generalized decrease" in Plaintiff's shoulder range.  *Id.*

"They also noted a lumbar MRI from January 2019 and Dr. Jenouri's other clinical findings to

support their proposed exertional and postural limitations."  *Id.*  According to the ALJ, the

assessments of Drs. Jenouri, Seok, and Saeed were "consistent with the [Plaintiff's] other

physical exams, which have produced findings similar to those noted by Dr. Jenouri."  *Id.*  The

ALJ did not identify which "other physical exams" it deemed consistent with the findings of Dr.

Jenouri's sole consultative examination on April 25, 2019.  *See id.*

  The ALJ also found Dr. Long's opinion to be persuasive "because it [wa]s supported by

her consultative clinical exam," and it was "consistent with the [Plaintiff's] other largely benign

mental exams . . . and reported activities and abilities."  *Id.* at 20-21.  The ALJ noted Plaintiff

"attributed most of his functional difficulties, including cognitive, to his alleged physical

symptoms."  *Id.* at 21.  Yet, the ALJ offered no finding or conclusion about whether Plaintiff's

pain affected his ability to concentrate, maintain pace, and keep regular attendance. *See id.* at 20-22.

Conversely, the ALJ was unpersuaded by the opinions offered by Plaintiff's healthcare professionals (i.e., Dr. Bennett, Dr. Kelly, NP Leonard, and Dr. Geller). *Id.* at 21-22. According to the ALJ, these opinions lacked persuasive value because they were completed on "check-box forms, with few, if any, explanations or references to specific clinical or diagnostic findings to support the proposed limitations." *Id.* at 22. The ALJ also found unpersuasive specific limitations proposed by each of the healthcare professionals. *See id.* at 21-22.

First, the ALJ was unpersuaded by Dr. Kelly's opinion that Plaintiff "would be 'off-task' more than 33-percent of the day and absent from work more than four days per month." *Id.* at 21. According to the ALJ, this opinion was "inconsistent with [Dr. Kelly's] March 2019 opinion that [Plaintiff] could lift and carry up to 40 pounds 'occasionally,' stand and/or walk up to six hours per day, and had no pushing, pulling, sitting, postural, manipulative, or environmental limitations." *Id.* Second, the ALJ concluded "the level of mental limitation proposed by Dr. Geller is inconsistent with the opinions of Dr. Long and both state agency psychologists." *Id.* at 22. Finally, the ALJ found unpersuasive "the opinions regarding [Plaintiff's] ability to remain on task and maintain attendance" because they were "purely speculative, they are unsupported by [Plaintiff's] documented mental status exams and inconsistent with his demonstrated ability to timely attend his various appointments as scheduled." *Id.*

### 4.   Legal Standard

For disability claims filed on or after March 27, 2017, an ALJ's review of medical opinion evidence and prior administrative medical findings is governed by 20 C.F.R. § 404.1520c. Under this regulation, applicable here, the Commissioner "will not defer or give any

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see also Howard D. v. Saul*, No. 5:19-CV-01615 (BKS), 2021 WL 1152834, at *11 (N.D.N.Y. Mar. 26, 2021). Rather, the ALJ must use five factors to determine the persuasiveness of the medical opinion evidence and prior administrative medical findings: supportability; consistency; relationship with the claimant; specialization; and other factors, such as "a medical source's familiarity with the other evidence in a claim." 20 C.F.R. §§ 404.1520c(a)-(c); *see also Howard*, 2021 WL 1152834, at *11.

The two most important factors in this analysis are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. The ALJ is specifically required to "explain how she considered the supportability and consistency factors" when determining the persuasiveness of "a medical source's medical opinions or prior administrative medical findings." 20 C.F.R. § 404.1520c(b)(2); *see also Howard*, 2021 WL 1152834, at *11. "If the ALJ fails adequately to explain the supportability or consistency factors, or bases her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630 (LJL) (BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), *report and recommendation adopted*, No. 19-CV-4630 (LJL), 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021); *see also Howard*, 2021 WL 1152834, at *12 (observing "courts have remanded where an ALJ did not adhere to the regulations") (collecting cases).

Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by "relevant . . . objective medical evidence and supporting explanations," the "more persuasive" it will be. 20 C.F.R. § 404.1520c(c)(1); *Carmen M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532-MJR, 2021 WL 5410550, at *4 (W.D.N.Y.

Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.").  Under the consistency factor, a medical opinion or prior administrative medical finding is "more persuasive" if it is consistent "with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); *Galo G. v Comm'r of the Soc. Sec. Admin*, No. 3:20-CV-1011 (FJS), 2021 WL 5232722, at *4 (N.D.N.Y. Nov. 9, 2021) ("The regulations provide that with respect to consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.").

"An ALJ must consider, but is not required to discuss, the three remaining factors when determining the persuasiveness of a medical source's opinion."  *Howard D.*, No. 2021 WL 1152834, at *11; *see also* 20 C.F.R. §§ 1520c(a), (b)(2).  However, where the ALJ has found two or more divergent medical opinions to be equally well supported and consistent with the record, the ALJ must articulate how he or she evaluated the three remaining factors.  20 C.F.R. §§ 404.1520c(b)(3).

### 5.   The ALJ Erred in Evaluating the Medical Opinions

Plaintiff claims the ALJ's evaluation of medical opinion evidence is flawed because the ALJ failed to follow the correct legal standards, and substantial evidence does not support the ALJ's conclusions.  (Dkt. No. 9 at 9-22.)  Respondent argues the ALJ's analysis comports with the governing legal standards, and his determination is supported by substantial evidence.  (Dkt. No. 14 at 6-21.)

a.  *Contrary Medical Opinion or Overwhelmingly Compelling Analysis*

Plaintiff argues the ALJ could not reject the medical opinions of Drs. Kelly and Bennet about his concentration, work pace, and attendance limitations without "a contrary medical opinion or an overwhelmingly compelling circumstantial law analysis."  (Dkt. No. 9 at 9-12.) Plaintiff asserts the ALJ cannot point to any contrary medical opinion because Drs. Seok and Saeed did not opine on Plaintiff's concentration, work pace, and attendance limitations.  *Id.* Plaintiff accordingly claims the ALJ's RFC determination is unsupported by substantial evidence and lacks an overwhelmingly compelling analysis.  *See id.*  Respondent contends "the ALJ was not required to solicit a contrary medical opinion to validate his RFC findings," and the "overwhelmingly compelling analysis" is inapplicable because it "was borne out of the treating physician rule."  (Dkt. No. 14 at 11-13.)

The Court agrees with Plaintiff that substantial evidence does not support the ALJ's residual functional capacity determination.  (*See* Dkt. No. 9 at 12.)  The substantial evidence standard resolves this issue, *see Tejada*, 167 F.3d at 773, not the lack of an overwhelmingly compelling analysis as cited by Plaintiff.  *See generally Messina v. Comm'r of Soc. Sec. Admin.*, 747 F. App'x 11, 15-16 (2d Cir. 2018) ("While a *treating physician's* retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence.") (emphasis added) (quoting *Byam v. Barnhart*, 336 F.3d 172, 183 (2d Cir. 2003)); *Shaw v. Chater,* 221 F.3d 126, 134-35 (2d Cir. 2000) (prohibiting the ALJ from substituting "his own expertise or view of the medical proof for the *treating physician's* opinion," finding that the ALJ did, and explaining "[t]his is not the overwhelmingly compelling type of critique that would permit the [ALJ] to overcome an otherwise valid medical opinion.") (emphasis added).  The new regulations displace the treating

physician rule, but they make no explicit endorsement or rejection of the rule set forth in *Shaw v. Chater* and accompanying precedent (the "*Shaw* rule").[5]  *Compare Shaw,* 221 F.3d at 134-35, *with* 20 C.F.R. §§ 404.1545(a)(3), (e) (setting forth the standard for evaluating a claimant's residual functional capacity); *id.* at § 404.1520(e) (explaining that the residual functional capacity determination involves assessing all relevant evidence); *id.* at § 404.1520c (governing the evaluation of medical opinion evidence); *id.* at § 404.1529 (governing the evaluation of evidence of a claimant's symptoms, including pain).  In other words, this Court has been unable to find a clear endorsement or rejection of the *Shaw* rule in the new regulations and accompanying case law.  *See generally* SSR 16-3P, 2017 WL 5180304, at *3-12 (explaining how to apply the standards set forth in 20 C.F.R. § 404.1529); SSR 96-8p (available at https://www.ssa.gov/OP_Home/rulings/di/01/SSR96-08-di-01.html) (last visited Feb. 22, 2022) (explaining how to assess residual functional capacity).

The *Shaw* rule was created through case law that applied a regulation, the treating physician rule, which has since been superseded by a new regulation for evaluating medical opinion evidence.  *See Colgan v. Kijakazi*, 22 F.4th 353, 359-60 (2d Cir. 2022) (explaining the treating physician rule) (citing 20 C.F.R. § 404.1527); *see also Messina*, 747 F. App'x at 15-16; *Byam v. Barnhart*, 336 F.3d at 183; *Shaw,* 221 F.3d at 134-35.  However, the new regulation, set forth in 20 C.F.R. § 404.1520c, does not supersede the substantial evidence standard.  *See* 20 C.F.R. § 404.1520c; *see, e.g.*, *Joseph Eugene F., v. Comm'r Soc. Sec*, No. 1:20-CV-04356 (GRJ), 2022 WL 355918, at *1, 9 (S.D.N.Y. Feb. 7, 2022) (concluding the ALJ's RFC

---

[5] Plaintiff does not cite any opinions that apply the *Shaw* rule to cases governed by the new regulations.  (*See* Dkt. No. 9 at 9-12.)  The Court is unaware of any cases in this circuit that have explicitly applied the *Shaw* rule to claims filed on or after March 27, 2017.

"determination . . . was supported by substantial evidence" where the claimant filed for benefits on March 28, 2017).  That standard, and the accompanying case law, resolves this issue.

First, courts applying the substantial evidence standard under the prior regulation considered whether *any* medical opinion evidence supported the ALJ's RFC determination—even where there was no treating physician opinion evidence to conflict with the ALJ's RFC determination.  *See, e.g.*, *Giddings v. Astrue*, 333 F. App'x 649, 652-53 (2d Cir. 2009); *Ippolito v. Comm'r of Soc. Sec.*, No. 1:18-CV-00403 (EAW), 2019 WL 3927453, at *4 (W.D.N.Y. Aug. 19, 2019); *Bleil v. Colvin*, No. 3:15-CV-1492 (LEK) (ATB), 2017 WL 1214499, at *4-5, 8-9 (N.D.N.Y. Mar. 31, 2017); *Glessing v. Comm'r of Soc. Sec.*, No. 13-CIV-1254 (BMC), 2014 WL 1599944, at *10 (E.D.N.Y. Apr. 21, 2014).  Stated differently, even when there was no opinion entitled to deference under the treating physician rule, courts weighed substantial evidence by assessing whether the ALJ's RFC determination was supported by any medical opinion.  For example, in *Giddings v. Astrue*, the Second Circuit concluded the ALJ's RFC determination was not supported by substantial evidence.  333 F. App'x at 650.  There, the "only medical opinion . . . that specifically addresses the effect of Giddings's impairment on her ability to work" was the opinion of Dr. Hargraves, who was "not entitled to the deference of a treating physician."  *Id.* at 652.  The Court observed the ALJ's RFC determination "flatly contradict[ed] the medical opinion of Dr. Hargraves."  *Id.* at 651.  The Court also observed that other medical reports did not address or undercut "the exertional limitations indicated by Dr. Hargraves," and Giddings's testimony was "consistent with, if not supportive of, Dr. Hargraves's assessment of Giddings's exertional limitations."  *Id.* at 653-54.  The Court therefore concluded substantial evidence did not support the ALJ's RFC determination because: "(1) the RFC cannot be squared with Dr. Hargraves's medical opinion; (2) [the ALJ's] analysis of other medical opinions did not

contradict or undercut Dr. Hargraves's medical opinion; and (3) [the ALJ] did not adequately explain why Giddings's testimony" supported the ALJ's RFC rather than Dr. Hargraves's opinion. *Id.* at 654-55.

Similarly, in *Ippolito v. Comm'r of Soc. Sec.*, the Court concluded the ALJ's RFC determination was "not supported by substantial evidence." 2019 WL 3927453, at *5. There, "the sole medical opinion of record to assess Plaintiff's RFC was issued by consultative examiner Dr. John Schwab." *Id.* at 3. However, the ALJ's RFC determination bore "no clear relation to Dr. Schwab's opinion," or "any other medical opinion." *Id.* at 4. The Court explained "Dr. Schwab's opinion does not constitute substantial evidence for the ALJ's findings," because "Dr. Schwab offered no opinion on the particular limitations assessed by the ALJ." *Id.* The Court concluded "the ALJ erred in formulating a highly specific RFC finding for Plaintiff without reference to any competent medical opinion." *Id.*; *see generally Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) ("The ALJ is not permitted to substitute his own expertise or view of the medical proof for the treating physician's opinion *or for any competent medical opinion*.") (emphasis added); *Thomas M. N. v. Comm'r of Soc. Sec.*, No. 5:19-CV-0360 (GTS), 2020 WL 3286525, at *4 (N.D.N.Y. June 18, 2020) (explaining the "limited circumstances in which it is proper for an ALJ to make an RFC determination without a functional assessment from an acceptable medical source . . . include (a) where the medical evidence shows relatively little physical impairment, and (b) where the record contains sufficient evidence from which an ALJ can assess the RFC.").

This Court remanded for similar reasons in *Bleil v. Colvin*, where substantial evidence did not support the ALJ's RFC determination because it was "contrary to the opinions of all three consultative medical examiners who considered the issue," the ALJ did not cite "any medical

opinion to support her" RFC, and there was "no such medical opinion in the record."  2017 WL 1214499, at *8-9.  Likewise, in *Glessing v. Comm'r of Soc. Sec.*, the Court concluded substantial evidence did not support the ALJ's RFC determination because it was "contrary to the only medical opinion in the record that spoke of plaintiff's ability to work" and the ALJ cited no alternative opinion in support of the RFC determination.  2014 WL 1599944, at *10, 12.

Here, the ALJ did not cite medical opinion evidence to support his conclusion that Plaintiff has no limitations in his ability to maintain concentration, work pace, and regular attendance.  (*See* T. at 18-22.)  The only medical opinions that address those limitations contradict the ALJ's conclusion.  *Id.* at 407, 419-20, 424-25, 535-36;[6] *cf. id.* at 528-29, 531-32. For example, Drs. Kelly, Bennett, and Geller each opined that Plaintiff's impairments and accompanying symptoms, including pain, would limit his ability to maintain concentration, work pace, and regular attendance.  *Id.* at 419-20, 424-25, 535-36.  Although the ALJ did not find these three opinions persuasive, he cited no evidence—including medical opinion evidence—that directly contradicts them.  *See id.* at 18-22.

---

[6] The ALJ treats the assessments from each of these sources (i.e., Drs. Long, Kelly, Bennett, and Geller) as medical opinions.  (T. at 20-22.)  Neither party challenges the ALJ's decision to treat these assessments as medical opinions.  (*See* Dkt. Nos. 9, 14; *see generally* 20 C.F.R. § 404.1513(a)(2) (defining "Medical opinion").)  The medical opinions from Drs. Seok and Saeed make no reference to whether Plaintiff's impairments and accompanying symptoms, including pain, would limit his ability to maintain concentration, work pace, and attendance. (*See* T. at 71-73, 84-86, 99-102, 112-15.)  Respondent argues this silence should be read as an implicit rejection of any such limitations.  (Dkt. No. 14 at 17-18.)  The Court is unpersuaded. The disability determination explanations from both Drs. Seok and Saeed indicate that their opinions were based, in part, on a review of Dr. Long's examination from April 25, 2019.  (*See* T. at 65-66, 71, 78-79, 84, 94, 99-100, 107, 112-13.)  Dr. Long opined Plaintiff's pain would cause mild to moderate limitations in his ability to concentrate.  *Id.* at 407.  Yet, Drs. Seok and Saeed indicated that no medical opinion they had reviewed was more restrictive than theirs.  *Id.* at 73, 86, 102, 115.  Dr. Long's opinion is such an opinion.  The Court accordingly declines Respondent's invitation to infer Drs. Seok and Saeed rejected Dr. Long's opinion that Plaintiff's pain would cause mild to moderate limitations in his ability to concentrate.

For example, according to the ALJ, Dr. Kelly's opinion about Plaintiff's concentration, work pace, and attendance limitations was "inconsistent with his March 2019 opinion that [Plaintiff] could lift and carry up to 40 pounds occasionally, stand and/or walk up to six hours per day, and had no pushing, pulling, sitting, postural, manipulative, or environmental limitations." *Id.* at 21. These opinions, and the accompanying limitations, do not conflict. Dr. Kelly's opinion from March 17, 2019, did not address Plaintiff's mental limitations or his limitations on maintaining attendance. *Id.* at 384-85. It addressed his exertional, postural, manipulative, and environmental limitations, which are separate from mental limitations. *See id.*; *see generally* SSR 96-9P, 1996 WL 374185, at *5-9 (discussing exertional and non-exertional limitations). Mental limitations are different from exertional, postural, manipulative, and environmental limitations. *See generally* SSR 96-9P, 1996 WL 374185, at *5-9. Attendance limitations are also different from—and not incorporated in the descriptions of—exertional, postural, manipulative, and environmental limitations. *See id.* The ALJ failed to explain why, or how, Plaintiff's mental and attendance limitations are inconsistent with his exertional, postural, manipulative, and environmental limitations. (T. at 21-22.)

The ALJ also claimed Plaintiff's concentration and work pace limitations were inconsistent with: (a) "the opinions of Dr. Long," (b) "both state agency psychologists," (c) Plaintiff's "mostly normal mental status exams," and (d) Plaintiff's "demonstrated ability to timely attend his various appointments as scheduled." *Id.* at 22. Dr. Long opined Plaintiff may have "mild to, at times, moderate limitations regarding maintaining attention and concentration as he reports experiencing sudden nerve pain, which is a distraction." *Id.* at 407. This opinion is consistent with the opinions from Drs. Kelly, Bennett, and Geller that Plaintiff had limitations in his capacity to maintain concentration and work pace. *Compare id.*, *with id.* at 419-20, 424-25,

535-36.  Although the state agency psychologists offered no explanation for their conclusion, they both indicated that Plaintiff would have a mild limitation in his ability to "concentrate, persist, or maintain pace."  *See id.* at 68-69, 81-82, 97-98, 110-11.  Substantial evidence accordingly does not support ALJ's conclusion that the opinions from Drs. Kelly, Bennett, and Geller conflicted with the opinions of Dr. Long and both state agency psychologists on these points.

The ALJ's remaining observations about Plaintiff's mental status exams and ability to engage in self-care offer little insight into his ability to maintain concentration, work pace, and regular attendance.  (*See generally* T. at 22.)  As the ALJ noted, Plaintiff "testified that he takes medications that cause drowsiness, fatigue . . . and mental 'fog.'"  *Id.* at 19; *see also id.* at 43, 51-52, 269, 271, 282, 284.  Medical sources also indicated that Plaintiff's numerous pain medications would cause "drowsiness" and "impaired cognitive function."  *Id.* at 420, 529; *see also id.* at 407, 431.  Both Plaintiff and various medical sources indicated that Plaintiff's pain was persistent but varied in intensity.  *Id.* at 46, 52-53, 384, 403, 419, 424, 460, 500, 506, 528; *accord id.* at 283, 363-71, 407.  His "normal" mental status exams accordingly offer little insight into how his impairments, persistent pain, and medication-induced side effects impacted his ability to maintain concentration, work pace, and regular attendance.  *See generally id.* at 22.

Plaintiff's determined attempts to address his impairments and associated pain through healthcare strengthen, rather than weaken, his claim.  *See* 20 C.F.R. § 404.1529(c)(3)(v) ("Factors relevant to your symptoms, such as pain, which we will consider include . . . Treatment, other than medication, you receive or have received for relief of your pain or other symptoms"); SSR 16-3P, 2017 WL 5180304, at *9 ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments,

24

referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."); *see also Patrick M. v. Saul,* No. 3:18-CV-290 (ATB), 2019 WL 4071780, at *10 (N.D.N.Y. Aug. 28, 2019) ("The Plaintiff's ability to attend medical appointments and engage in other daily activities of limited duration do not correlate to the Plaintiff's ability to stay on-task during an eight-hour work day or the likelihood that he would miss work several days per month because of exacerbations of his chronic back or neck pain."). The ALJ's contrary conclusion overlooks (or misapplies) the relevant inquiry under 20 C.F.R § 404.1529(c)(3)(v). *See* SSR 16-3P, 2017 WL 5180304, at *9. Plaintiff's dedication to his treatment, development of a thorough medical record, and demonstrated respect for the schedules of healthcare professionals by timely attending appointments strengthen his claim. A contrary conclusion would undermine the thrust of the relevant inquiry, deter the development of a thorough medical record, and penalize claimants for honoring scheduling agreements with healthcare professionals.

In short, Plaintiff presented opinion evidence from three sources indicating he had limitations in his ability to maintain concentration, work pace, and regular attendance. (T. at 419-20, 424-25, 535-36.) One of the Commissioner's experts explicitly opined that Plaintiff's pain would limit his ability to concentrate, *id.* at 407, and two reported that he would have mild limitations in his ability to "concentrate, persist, or maintain pace." *Id.* at 68-69, 81-82, 97-98, 110-11. The ALJ found these opinions persuasive. *Id.* at 21. Without citing contrary evidence—medical or otherwise—the ALJ nonetheless concluded Plaintiff had no limitations in his ability to maintain concentration, work pace, and regular attendance. *See id.* at 18-22. Substantial evidence does not support this conclusion. *See Giddings*, 333 F. App'x at 652-53; *Ippolito,* 2019 WL 3927453, at *3-5; *Bleil*, 2017 WL 1214499, at *8-9; *Glessing,* 2014 WL

1599944, at \*10, 12; *accord Dinapoli v. Comm'r of Soc. Sec.*, No. 14 CIV. 3652 (AMD), 2016 WL 1245002, at \*14 (E.D.N.Y. Mar. 24, 2016) (finding the ALJ's RFC determination unsupported by substantial evidence where it was contradicted by evidence and unaddressed by medical opinions).

Second, "there are limited circumstances in which it is proper for an ALJ to make an RFC determination without a functional assessment from an acceptable medical source." *Thomas M. N.*, 2020 WL 3286525, at \*4.  "These include (a) where the medical evidence shows relatively little physical impairment, and (b) where the record contains sufficient evidence from which an ALJ can assess the RFC."  *Id.*; *see also Van Dyne v. Saul*, No. 20-CV-260 (MKB), 2021 WL 1210460, at \*14 (E.D.N.Y. Mar. 31, 2021); *Hogans v. Comm'r of Soc. Sec.*, No. 1:19-CV-02737 (SDA), 2020 WL 5496114, at \*14 (S.D.N.Y. Sept. 11, 2020); *Velazquez v. Berryhill*, No. 3:18-CV-01385 (SALM), 2019 WL 1915627, at \*10 (D. Conn. Apr. 30, 2019); *Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 471-72 (W.D.N.Y. 2018).

Neither exception applies here because the ALJ did not "make an RFC determination without a functional assessment from an acceptable medical source." *Thomas M. N.*, 2020 WL 3286525, at \*4.  Rather, the ALJ made an RFC determination that contradicted the opinion of every medical source who opined on Plaintiff's capacity to maintain concentration, work pace, and regular attendance.  (*Compare* T. at 18-22, *with id.* at 407, 419-20, 424-25, 535-36.)  As explained above, that determination is unsupported by substantial evidence.

In any event, the first exception does not apply because Plaintiff suffers from a complex and severe physical impairment.  *See generally id.* at 407, 419-20, 424-25, 535-36; *see also, e.g.*, *Karmicka M. v. Saul*, No. 19-CV-00914 (JLS), 2020 WL 7352657, at \*4–5 (W.D.N.Y. Dec. 15, 2020) ("The ALJ was not permitted to determine Plaintiff's RFC using a common-

sense judgment because Plaintiff's medical record contained complex medical findings like MRI results.").  To the extent the second exception applies, the ALJ's RFC determination contradicts substantial evidence of Plaintiff's limitations in maintaining concentration, work pace, and regular attendance.  (*See* T. at 407, 419-20, 424-25, 535-36.)

> b.      *Check-Box Forms*

Plaintiff argues the medical opinions of Drs. Kelly, Bennett, Seok, and Saeed were all completed on check-box forms, so it was improper for the ALJ to devalue the opinions of Dr. Kelly and Dr. Bennet "for using 'check-box forms, with few, if any explanations or references to specific clinical or diagnostic findings."  (Dkt. No. 9 at 17*,* citing the ALJ's decision.) Respondent contends "poorly explained, check-marked opinions are entitled to little evidentiary weight," but this rule does not apply to the opinions of Drs. Seok and Saeed, which "were supported by sufficient rationale."  (Dkt. No. 14 at 13-14.)

In *Colgan v. Kijakazi*, 22 F.4th 353, 361 (2d Cir. 2022), the Second Circuit addressed whether it was proper for an ALJ to discount a treating physician's opinion because it was presented in a check-box form.  The Court answered that question in the negative, explaining "an ALJ's inquiry in disability factfinding turns on the substance of the medical opinion at issue— not its form—and ultimately whether there is reasonable evidence in the record that supports the conclusions drawn by the medical expert."  *Colgan*, 22 F.4th at 361.  The Court concluded the ALJ erred in discounting the opinion, which "was supported by voluminous treatment notes gathered over the course of nearly three years of clinical treatment."  *Id.* at 362.  The Court also found it troubling that the ALJ assigned the state agency psychologist's adverse opinion significant weight, even though it too "had been provided on a check-box form."  *Id.* at 362 n.6.

Here, the ALJ discounted the persuasive value of opinions offered by Dr. Kelly, Dr. Bennett, NP Leonard, and Dr. Geller because they were issued on "check-box forms, with few, if

any, explanations or references to specific clinical or diagnostic findings to support the proposed limitations." (T. at 22.) It would have been improper for the ALJ to discount these opinions for the sole reason that they were issued on check-box forms. *Colgan*, 22 F.4th 353, 361-62; *see also* 20 C.F.R. § 404.1520c. But the ALJ did not do that here. (*See* T. at 22.) Rather, the ALJ also took issue with the opinions' lack of supporting explanations and citations to supporting medical evidence. *Id.* This critique is not just permitted under the new regulations, it is required—the ALJ must evaluate the supportability of medical opinions. *See* 20 C.F.R. § 404.1520c(c)(1). "The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations." *Carmen M.*, 2021 WL 5410550, at *4.

The ALJ did not err in concluding these opinions lacked supporting explanations "or references to specific clinical or diagnostic findings to support the proposed limitations." (*Compare* T. at 22, *with id.* at 419-20, 424-25, 528-29, 535-36.) The assessments from Dr. Kelly, NP Leonard, Dr. Bennett, and Dr. Geller do not include supporting explanations. *See id.* at 419-20, 424-25, 528-29, 535-36. Each of these medical sources failed to explain how and/or why they concluded Plaintiff had a limited capacity to maintain concentration, work pace, and regular attendance. *Id.* Although these medical sources tangentially referenced treatment notes and objective medical evidence, they did not explain why those notes and evidence supported their conclusions. *See id.* The ALJ did not err in concluding the supportability factor weighed against finding these opinions persuasive. *Id.* at 22.

However, as explained above, the ALJ did err in concluding these opinions were inconsistent with the evidence of record. *Id.* at 21-22; *see also* 20 C.F.R § 404.1520c(c)(2) ("The more consistent a medical opinion(s) . . . is with the evidence from other medical sources

and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."). Dr. Kelly's opinion about Plaintiff's mental limitations was not inconsistent with his opinion about Plaintiff's exertional, postural, manipulative, and environmental limitations.  *See id.* at 21; *compare id.* at 384-85, *with id.* at 419-20.  An individual can experience severe mental limitations without experiencing severe exertional, postural, manipulative, and environmental limitations.  Stated differently, a limitation in one RFC category does not necessarily dictate the existence—and corresponding severity—of a limitation in every other RFC category.  *But see id.* at 21.

The opinions from Drs. Kelly, Bennett, and Geller concerning Plaintiff's ability to maintain concentration and work pace are consistent with Dr. Long's opinion and notations from both state agency psychologists.  *Compare id.* at 419-20, 424-25, 535-36, *with id.* at 68-69, 81-82, 97-98, 110-11, 407.  Dr. Long, state agency psychologist Dr. Brown, and state agency psychologist Dr. Blackwell each indicated that Plaintiff would have some limitations in his ability to maintain concentration and work pace.  *Id.* at 68-69, 81-82, 97-98, 110-11, 407. Indeed, every medical source to weigh in on the issue indicated Plaintiff would experience limitations in his capacity to concentrate and maintain work pace.  *See id.* at 68-69 (state agency psychologist Dr. Brown), 97-98 (state agency psychologist Dr. Blackwell), 110-11, 407 (Dr. Long), 419-20 (Dr. Kelly), 424-25 (Dr. Bennett), 528-29 (NP Leonard) 535-36 (Dr. Geller).[7] These opinions are consistent with evidence that Plaintiff's pain often causes him to lose focus, and that his pain medications would cause drowsiness, mental fog, and impaired cognitive functioning.  *Id.* at 19, 420, 529; *see also id.* at 43, 51-52, 269, 271, 282, 284, 407, 431.

---

[7] *See supra*, note 6.

Substantial evidence supports the ALJ's conclusion that opinions from Drs. Kelly, Bennett, and Geller concerning Plaintiff's concentration and work pace limitations are unsupported by references to objective medical evidence and supporting explanations. *See id.* at 21-22.  However, substantial evidence does not support the ALJ's conclusion that those opinions are inconsistent with the record. *See id.*

c.  Medical Opinions of Drs. Seok and Saeed

Plaintiff challenges the ALJ's evaluation of the medical opinions of Drs. Seok and Saeed on the grounds that the ALJ did not satisfy the governing legal standard, and his decision is unsupported by substantial evidence.  (Dkt. No. 9 at 14-19, 21.)  Respondent contends "[t]he ALJ's analysis comports with the[] revised regulations" and his conclusions are supported by substantial evidence.  (Dkt. No. 14 at 13-14, 19-21.)

The ALJ concluded Drs. Seok and Saeed "each provided a detailed narrative analysis of the evidence, which included references to specific clinical and diagnostic findings to support their opinions."  (T. at 20.)  This Court views the assessments from Drs. Seok and Saeed differently.  Similar to the opinions offered by Drs. Kelly, Bennett, and Geller, the opinions offered by Drs. Seok and Saeed lack "objective medical evidence and supporting explanations." *See* 20 C.F.R. § 404.1520c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be.").  The identical assessments from Drs. Seok and Saeed, completed on check box forms, include no analysis. (*See* T. at 71-73, 84-86, 99-102, 112-15; *see also Colgan*, 22 F.4th at 362 n.6 ("Troublingly, the ALJ did not seem to mind that a state agency psychologist's adverse opinion had been provided on a check-box form when assigning it significant weight.").)  They reference Plaintiff's MRI from January 19, 2019, but they fail to explain why it is relevant, and why it supports their

conclusions.  *See id.*  Yet, according to Drs. Seok and Saeed, Plaintiff's longitudinal treatment

records, not objective medical evidence alone, were "most informative in assessing the

consistency of [Plaintiff's] statements about [his] symptom related limitations."  *Id.* at 70, 83, 99,

112.  Despite this, the doctors' identical "Additional Explanation" sections only discuss

treatment notes from a single exam from April 25, 2019.  *Id.* at 73, 86, 102, 115.  The doctors'

summary of treatment notes from that examination lacks an explanation as to why the treatment

notes support the disability determination.  *See id.*  A summary of treatment notes and objective

medical evidence is not a supporting explanation.  *See, e.g.*, *Kathleen M. v. Comm'r of Soc. Sec.*,

No. 8:20-CV-1040 (TWD), 2022 WL 92467, at *8 (N.D.N.Y. Jan. 10, 2022); *Esther Marie H. v.*

*Comm'r of Soc. Sec.*, No. 5:20-CV-00668 (TWD), 2021 WL 5629076, at *4–5 (N.D.N.Y. Dec.

1, 2021).

      In short, substantial evidence does not support the ALJ's conclusion that the opinions of

Drs. Seok and Saeed included a "detailed narrative analysis of the evidence" with objective

medical evidence and supporting explanations.  *Compare* 20 C.F.R. § 404.1520c(c)(1), *with* T. at

20.  Moreover, the ALJ failed to explain why he concluded these opinions were supported by

objective medical evidence and supporting explanations.  *See* 20 C.F.R. §§ 404.1520c(b)(2),

(c)(1); *see also Rivera,* 2020 WL 8167136, at *14 (requiring remand where the ALJ fails to

adequately explain the supportability factor); *Howard*, 2021 WL 1152834, at *12 (same).

      **B.**    **Evaluation of Symptoms and Residual Functional Capacity Determination**

      The ALJ began his residual functional capacity analysis by listing Plaintiff's symptoms.

(T. at 19.)  He concluded Plaintiff's "medically determinable impairments could reasonably be

expected to cause some of his alleged symptoms."  *Id.* at 22.  The ALJ nonetheless concluded

that, based upon his consideration of Plaintiff's symptoms, "the record as a whole does not

support limitations beyond those provided for within the above-found residual functional capacity." *Id.* at 19.  Without explaining how Plaintiff's symptoms compared to evidence in the record, the ALJ concluded his residual functional capacity finding was "consistent with the objective medical and other evidence of record." *Id.* at 19-20.  In other words, the ALJ concluded Plaintiff's "statements concerning the intensity, persistence and limiting effects of his symptoms are not entirely consistent with the medical evidence and other evidence of record," so Plaintiff "retains the residual functional capacity to perform work activities within the limitations" determined by the ALJ. *Id.* at 22-23.

Plaintiff claims the ALJ committed "legal error by failing to consider the relevant legal factors in assessing the limiting effects of [his] pain." (Dkt. No. 9 at 22.)  Plaintiff asserts the ALJ should have analyzed the intensity, persistence, and limiting effects of his symptoms under the factors set forth in 20 C.F.R. § 404.1529c(c)(3). *Id.* at 22-26.  According to Plaintiff, this error is prejudicial because a proper analysis of his symptoms under these factors supports the work pace and attendance limitations outlined in the opinions of Drs. Kelly and Bennett. *See id.* Respondent contends the ALJ properly considered some of the factors set forth in 20 C.F.R. § 404.1529c(c)(3), and was not required to explain his evaluation of the remaining factors because his reasoning was clear and correct. (Dkt. No. 14 at 21-23.)

The ALJ's errors in evaluating medical opinions impacted his conclusions about Plaintiff's symptoms and Plaintiff's residual functional capacity. *See, e.g.*, *Anne F. v. Saul*, No. 8:19-CV-774, 2020 WL 6882777, at *13 (N.D.N.Y. Nov. 24, 2020); *Rodriguez v. Colvin*, No. 3:14-CV-1552, 2016 WL 1275647, at *7 (N.D.N.Y. Mar. 31, 2016).  The ALJ failed to evaluate the intensity, persistence, and limiting effects of Plaintiff's symptoms under several of the factors set forth in 20 C.F.R. § 404.1529c(c)(3). (T. at 18-23.)  Moreover, because the ALJ's decision

lacks an analysis of Plaintiff's symptoms in relation to the evidence, this Court cannot conduct a meaningful review of the ALJ's RFC determination. *See Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013); *Pratts*, 94 F.3d 34, 39.

### 1.    Medical Opinion Errors Impacted the ALJ's Conclusions

To determine a claimant's residual functional capacity, the ALJ must consider "all of the relevant medical and other evidence," "including limitations that result from . . . symptoms." 20 C.F.R. §§ 404.1545(a)(3), (d); *see also* 20 C.F.R. § 404.1529(c); SSR 16-3P, 2017 WL 5180304, at *12. The ALJ's evaluation of a claimant's symptoms in turn requires the ALJ to consider all medical evidence, including medical opinion evidence. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4) (requiring the ALJ to consider evidence from medical sources when evaluating the intensity, persistence, and limiting effects of symptoms); SSR 16-3P, 2017 WL 5180304, at *6-7. When the ALJ conducts a flawed evaluation of medical opinion evidence, it impacts the ALJ's evaluation of symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4); *see also, e.g.*, *Anne F.*, 2020 WL 6882777, at *13; *Christopher B. v. Saul*, No. 8:19-CV-00905 (BKS), 2020 WL 5587266, at *19 (N.D.N.Y. Sept. 18, 2020). A flawed evaluation of medical opinion evidence also impacts the ALJ's assessment of a claimant's residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence"); *see also, e.g.*, *Rodriguez*, 2016 WL 1275647, at *7; *Mortise v. Astrue*, 713 F. Supp. 2d 111, 127 (N.D.N.Y. 2010).

Here, the ALJ denied Plaintiff's claim at step five, concluding he had sufficient residual functional capacity to perform work in the national economy. (T. at 23-24.) However, the ALJ's errors in evaluating the medical opinions of Drs. Kelly, Bennett, and Geller necessarily influenced his evaluation of Plaintiff's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)-(4); *see*

*also, e.g.*, *Anne F.*, 2020 WL 6882777, at *13. The ALJ's errors in evaluating the medical opinions of Drs. Seok and Saeed influenced his determination that Plaintiff's statements "concerning the intensity, persistence and limiting effects of his symptoms [were] not entirely consistent with the medical evidence." (T. at 22-23; *see also* 20 C.F.R. §§ 404.1529(a), (c); SSR 16-3P, 2017 WL 5180304, at *4-7.) Those errors infected the ALJ's evaluation of Plaintiff's residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(3); *see also, e.g.*, *Rodriguez*, 2016 WL 1275647, at *7. Remand is accordingly warranted. *Anne F.*, 2020 WL 6882777, at *13; *Rodriguez*, 2016 WL 1275647, at *7.

## 2.    The ALJ Failed to Evaluate Enumerated Factors

The ALJ failed to consider several factors that are central to the evaluation of Plaintiff's symptoms. (T. at 18-23*; see generally* 20 C.F.R. § 404.1529(c)(3) (setting forth factors the ALJ must consider when evaluating the intensity, persistence, and limiting effects of symptoms); SSR 16-3P, 2017 WL 5180304, at *4-12 (explaining the factors and their application). For example, the ALJ did not consider: (1) the location, duration, frequency, and intensity of Plaintiff's pain or other symptoms; (2) any precipitating and aggravating factors; (3) the type, dosage, effectiveness, and side effects of any medication Plaintiff takes or has taken to alleviate his pain or other symptoms; (4) the treatment Plaintiff received to relieve his pain or symptoms; or (5) measures Plaintiff uses or has used[8] to relieve his pains or symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3)(ii)-(vi); *see also* SSR 16-3P, 2017 WL 5180304, at *6-8.

---

[8] "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3P, 2017 WL 5180304, at *9.

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment of symptoms if substantial evidence supports the determination. *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326 (JPO), 2019 WL 667743, at *11 (S.D.N.Y. Feb. 19, 2019) (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018); *see also Cichocki*, 534 F. App'x at 76. "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)). Here, however, as noted above, substantial evidence does not support the ALJ's determination. Therefore, in addition to the errors identified and discussed above, these failures warrant remand. *Christopher B.*, 2020 WL 5587266, at *19-20; *Ingrassia v. Colvin*, 239 F. Supp. 3d 605, 627-28 (E.D.N.Y. 2017).

### 3.    The ALJ's Decision Frustrates Meaningful Review

The ALJ's residual functional capacity determination frustrates meaningful review because it lacks "specific reasons for the weight given to the [Plaintiff's] symptoms." SSR 16-3P, 2017 WL 5180304, at *10; *see also Cichocki*, 534 F. App'x at 76. "In evaluating an individual's symptoms, it is not sufficient for [ALJs] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3P, 2017 WL 5180304, at *10; *see also Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) ("conclusory statements regarding Plaintiff's capacities are not sufficient"). Instead, the decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the

adjudicator evaluated the individual's symptoms."  SSR 16-3P, 2017 WL 5180304, at *10; *see also* SSR 96-8P, 1996 WL 374184, at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").  The ALJ's decision does not satisfy this standard.  (T. at 18-23.)

The ALJ began his residual functional capacity analysis by listing Plaintiff's symptoms. *Id.* at 19.  He then concluded that, based upon his consideration of those symptoms, "the record as a whole does not support limitations beyond those provided for within the above-found residual functional capacity."  *Id.*  Without explaining how Plaintiff's symptoms compared to evidence in the record, the ALJ concluded his residual functional capacity finding was "consistent with the objective medical and other evidence of record."  *Id.* at 19-20.  This conclusory analysis is inadequate.  *See* SSR 16-3P, 2017 WL 5180304, at *10; *see also Natashia R.*, 2019 WL 1260049, at *11.  It lacks "specific reasons for the weight given to [Plaintiff's] symptoms."  SSR 16-3P, 2017 WL 5180304, at *10; *see also* SSR 96-8P, 1996 WL 374184, at *7.  It does not explain which symptoms the ALJ found consistent with record evidence, and which symptoms the ALJ found inconsistent with record evidence.  (*See* T. at 17; *see also Natashia R.*, 2019 WL 1260049, at *11; SSR 16-3P, 2017 WL 5180304, at *10; SSR 96-8P, 1996 WL 374184, at *7.)  It also does not address Plaintiff's symptoms under the factors set forth in 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii).  *See* SSR 16-3P, 2017 WL 5180304, at *4-12 (explaining the factors and their application).  Absent a more specific explanation of the ALJ's analysis, this Court cannot meaningfully review whether it is supported by substantial evidence. *Pratts*, 94 F.3d at 39.  Remand is accordingly warranted.  *Id.*

**IV.     REMAND**

On remand, the ALJ should begin by re-evaluating the persuasive value of the medical opinions pursuant to 20 C.F.R. § 404.1520c.  The ALJ should articulate how persuasive he finds each medical opinion under the supportability and consistency factors.  *Id.* at § 404.1520c(b)(2).  If the ALJ finds equally persuasive two or more medical opinions that diverge on a specific issue, he should articulate how persuasive he found those opinions under the remaining factors.  *Id.* at § 404.1520c(b)(3).  The ALJ should then assess the intensity, persistence, and limiting effects of Plaintiff's symptoms, considering "all of the medical and nonmedical evidence, including the information described in § 404.1529(c)."  20 C.F.R. § 404.1545(e); *see also id.* § 404.1545(a)(3); *see generally* SSR 16-3P, 2017 WL 5180304, at *4-10.

## V.        CONCLUSION

Considering the foregoing, the Court finds the Commissioner's decision was not based upon correct legal standards and substantial evidence does not support the determination that Plaintiff was not under a disability within the meaning of the Social Security Act.

**WHEREFORE**, it is hereby

**ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for proceedings consistent with this Decision and Order; and it is further

**ORDERED** that the Clerk provide a copy of this Decision and Order to the parties in accordance with the Local Rules of the Northern District of New York.

**IT IS SO ORDERED**.

Dated:        February 28, 2022
              Syracuse, New York

Therese Wiley Dancks
United States Magistrate Judge